THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Lead Plaintiff Victor A. Martignetti, along with David G. Albert, Keith Albert, Asif Ali, Steven S. Allen, Carlos Aquino, Antonio J. Arcos, David A. Atherton, Angel E. Barbosa, David Barkhouse, Paul Bentubo, Reynaldo A. Benzan, Stephen E. Bikofsky, Donald B. Bombino, Michael Bonilla, Christopher J. Borum, Brian P. Branley, Kevin F. Branley, Devon G. Brooks, James M. Brown, Richard Brown, Paul Burke, Steven Burke, Daniel P. Burroso, Eugene M. Bustillo, Joshua Buxbaum, Oral J. Bynoe, Jarred Cabral, Anthony J. Cacciola, Jason R. Callinan, John E. Callinan, Ryan Callinan, Andy Cazeau, Michael Cherubino, Philip Chu, Robert J. Ciriello, Jr., Mark S. Clavette, Robert Clinton, Kristen Cokely, Agrait Collazo, David Collins, Alexander Colovos, Omar Corona, Edmund A. Costa, James Costa, John Crowley, Joseph Crowley, Michael Daniliuk, Cameron O. Deane, David P. Diamond, James F. Diggins, Ann DiMascio, Kevin A. Donofrio, Mark Donovan, Kevin Dottin, John P. Drewicz, Jr., Sarah Drewicz, Gary Edwards, Stephen K. Edwards, James Ferreira, Carlos R. Figueroa, Jr., Sean Figueroa, David J. Fimiani, Joseph T. Flynn, Michael Foustoukos, Kyle Galuski, David M. Gamble, Thomas Gaudette, Christine Gilbertson, Anthony Grassi, Joseph G. Grassi, Matthew A. Grassi, James Greene, Frank Greenidge, Frank Gutoski, Lucas Harney, Andrew M. Hepner, Jr., Michael J. Hinds, Lawrence Hudson, Brian Hussey, Shawn L. Ivey, Jerry Jean-Baptiste, Carl J. Jones, John Jones, Donyell Joseph, Calvin Kantor, Jr., Joseph Kelley, Steven Kelly, Stephen W. Kervick, Ashley Kmiec, Craig Labastie, Frank Lange, Julio Laracuente, David Lee, Michael LeVecque, Christine Levesque, Loyd Lewis, Michael Logan, Gustavo Lopez, Sean Lowe, Donald W. Lucey, William Macedo, Matthew Mahoney, Daniel Marshall, Dennis V. Marshall, Jr., Jonathan Martins, Katie Masse, Casimir Maziarz, Catherine McCarthy, Daniel McGinty, Liam McMahon, Charles McNeeley, Daniel

McNeil, Charles J. McNeill, Jr., Kevin Medeiros, Melissa Miceli, Michael Miceli, Hercot L. Miller, Nicholas J. Mochi, Jr., David Moldonado, Pamela Morris, Michael R. Morrissey, Kenneth Mui, Janie Munro, Steven R. Murphy, Douglas G. Murrell, Brian Mushlin, Louis I. Neal, Peter N. Neal, Michael Neil, Michael D. Nickerson, Alfred Nicotra, Sean P. Norton, Timothy F. O'Brien, Brian O'Connor, Brendan O'Hearn, Oswaldo R. Ortiz, Nicole Pacheco, Ivelise Padgett-Pino, Michael E. Padua, Peter Photopoulos, Carl Pilgrim, Raymond Pina, Jr., John Poirier, Christopher Ponte, David Porter, William Porter, Kenel Prinston, Brian M. Pugliares, Lee Vieira Resendes, Marlon Rivera, Jonathan Russell, Christopher A. Samuel, Anthony J. Santiago, Che Santos, Michael Schwartz, William C. Simmons, Jr., Mark E. Smith, Matthew Sousa, Christopher T. Sullivan, Kathleen Sullivan, Lester J. Sullivan, Benny Szeto, David Szeto, George Tavares, Michael Taylor, Sean P. Tienney, Andrew Topouzoglou, Peter Vellucci, Hector M. Vicente, Edward Watson, Thomas Watson, Steve Wenzel, Buckowe Yam,

        Plaintiffs

  v.

City of Cambridge,

        Defendant

USDC Case No. 1:18-cv-10980

# FIRST AMENDED COMPLAINT

## INTRODUCTION

1. The Plaintiffs—Lead Plaintiff Victor A. Martignetti and the 173 other individuals listed infra at ¶2—are current and former police officers who are or were employed by the City of Cambridge, Massachusetts for all or a portion of the period between May 15, 2015 through the date the complaint

was filed on May 15, 2018.  This group of individuals shall be referred to hereinafter as "Plaintiffs."

      2.     The 173 additional Plaintiffs referenced supra at ¶1 are as follows: David G. Albert, Keith Albert, Asif Ali, Steven S. Allen, Carlos Aquino, Antonio J. Arcos, David A. Atherton, Angel E. Barbosa, David Barkhouse, Paul Bentubo, Reynaldo A. Benzan, Stephen E. Bikofsky, Donald B. Bombino, Michael Bonilla, Christopher J. Borum, Brian P. Branley, Kevin F. Branley, Devon G. Brooks, James M. Brown, Richard Brown, Paul Burke, Steven Burke, Daniel P. Burroso, Eugene M. Bustillo, Joshua Buxbaum, Oral J. Bynoe, Jarred Cabral, Anthony J. Cacciola, Jason R. Callinan, John E. Callinan, Ryan Callinan, Andy Cazeau, Michael Cherubino, Philip Chu, Robert J. Ciriello, Jr., Mark S. Clavette, Robert Clinton, Kristen Cokely, Agrait Collazo, David Collins, Alexander Colovos, Omar Corona, Edmund A. Costa, James Costa, John Crowley, Joseph Crowley, Michael Daniliuk, Cameron O. Deane, David P. Diamond, James F. Diggins, Ann DiMascio, Kevin A. Donofrio, Mark Donovan, Kevin Dottin, John P. Drewicz, Jr., Sarah Drewicz, Gary Edwards, Stephen K. Edwards, James Ferreira, Carlos R. Figueroa, Jr., Sean Figueroa, David J. Fimiani, Joseph T. Flynn, Michael Foustoukos, Kyle Galuski, David M. Gamble, Thomas Gaudette, Christine Gilbertson, Anthony Grassi, Joseph G. Grassi, Matthew A. Grassi, James Greene, Frank Greenidge, Frank Gutoski, Lucas Harney, Andrew M. Hepner, Jr., Michael J. Hinds, Lawrence Hudson, Brian Hussey, Shawn L. Ivey, Jerry Jean-Baptiste, Carl J. Jones, John Jones, Donyell Joseph, Calvin Kantor, Jr., Joseph Kelley, Steven Kelly, Stephen W.

Kervick, Ashley Kmiec, Craig Labastie, Frank Lange, Julio Laracuente, David Lee, Michael LeVecque, Christine Levesque, Loyd Lewis, Michael Logan, Gustavo Lopez, Sean Lowe, Donald W. Lucey, William Macedo, Matthew Mahoney, Daniel Marshall, Dennis V. Marshall, Jr., Jonathan Martins, Katie Masse, Casimir Maziarz, Catherine McCarthy, Daniel McGinty, Liam McMahon, Charles McNeeley, Daniel McNeil, Charles J. McNeill, Jr., Kevin Medeiros, Melissa Miceli, Michael Miceli, Hercot L. Miller, Nicholas J. Mochi, Jr., David Moldonado, Pamela Morris, Michael R. Morrissey, Kenneth Mui, Janie Munro, Steven R. Murphy, Douglas G. Murrell, Brian Mushlin, Louis I. Neal, Peter N. Neal, Michael Neil, Michael D. Nickerson, Alfred Nicotra, Sean P. Norton, Timothy F. O'Brien, Brian O'Connor, Brendan O'Hearn, Oswaldo R. Ortiz, Nicole Pacheco, Ivelise Padgett-Pino, Michael E. Padua, Peter Photopoulos, Carl Pilgrim, Raymond Pina, Jr., John Poirier, Christopher Ponte, David Porter, William Porter, Kenel Prinston, Brian M. Pugliares, Lee Vieira Resendes, Marlon Rivera, Jonathan Russell, Christopher A. Samuel, Anthony J. Santiago, Che Santos, Michael Schwartz, William C. Simmons, Jr., Mark E. Smith, Matthew Sousa, Christopher T. Sullivan, Kathleen Sullivan, Lester J. Sullivan, Benny Szeto, David Szeto, George Tavares, Michael Taylor, Sean P. Tienney, Andrew Topouzoglou, Peter Vellucci, Hector M. Vicente, Edward Watson, Thomas Watson, Steve Wenzel, Buckowe Yam.

 3. Each of the Plaintiffs is or was an "employee" within the meaning of both federal and state wage and hour laws, as follows:

    (A)    Section 203(e) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA"); and,

    (B)    General Laws chapter 149, sections 148, 150 (Massachusetts "Wage Act").

4. The Defendant in this action is the City of Cambridge, Massachusetts (hereinafter "City").

5. The City is an "employer" within the meaning of Section 203(b) of the FLSA, as amended, 29 U.S.C. §201 et seq.; and  "a person having employees in his service" and "employer" within the meaning G. L. c.149, §§ 148, 150.

6. By this complaint Plaintiffs seek unpaid overtime wages as well as "liquidated damages" under the FLSA; unpaid overtime wages and "treble damages" under the Massachusetts Wage Act; plus attorneys fees, costs incurred in this action, and other applicable relief under both the FLSA and Massachusetts Wage Act; all for the period May 15, 2015 through the date the complaint was filed on May 15, 2018.

7. By letter dated May 16, 2018, the Massachusetts Attorney General sent correspondence, attached hereto and incorporated herein as Exhibit 1, authorizing a Private Right of Action against the City of Cambridge on behalf of Lead Plaintiff Victor A. Martignetti and similarly situated workers, pursuant to G. L. c. 149, § 150, in response to a complaint and request for such authorization sent by undersigned counsel on behalf of Plaintiffs filed with the Massachusetts Attorney General on May 15, 2018.  The aforementioned

correspondence authorizes the Massachusetts Wage Act claim set forth in Count II and Count III of this Complaint for Plaintiffs in the above-captioned matter.

## JURISDICTION

8. Jurisdiction over this action is conferred on the court for the FLSA claim by 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337; and for the Massachusetts Wage Act claim by G. L. c.149, § 150, as well as the federal supplemental jurisdiction statute 28 U.S.C. § 1367(a).

9. This court is the proper venue for this action pursuant to 28 U.S.C. §1391(b).

## FACTUAL BACKGROUND

10. At all times relevant, Plaintiffs worked one of two regular schedules:

   A. Plaintiffs assigned to the Patrol Division worked a so-called "4-2" schedule that consisted of a recurring pattern of four consecutive days working an eight hour and twenty minute (8.33 hours) shift, followed by two days off (hereinafter the "4-2 schedule").

   B. Plaintiffs assigned to other divisions of the police department worked regular schedule pattern referred to as a "5-2" schedule that consisted of working five consecutive days on duty followed by two days off duty ("5-2 schedule"). Of Plaintiffs that worked a 5-2 schedule, those assigned to the Selective Enforcement Division (Traffic) worked eight hour and twenty minute (8.33 hour) shifts;

and those assigned to other areas such as the Investigations (Detectives), Off-Duty Employment (Details), Academy/Training, Records/Property, Court Prosecutor, and Community Relations worked eight hour (8.00 hour) shifts.

11. Plaintiffs who worked the 4-2 schedule and 5-2 schedule were compensated for 1946.56 hours of the total hours they worked pursuant to their regularly scheduled hours. The 1946.56 hours of pay constituted:

    A. compensation for the total hours performed by Plaintiffs that worked eight hour (8.0 hour) shifts pursuant to their annual regularly scheduled hours; and

    B. compensation for about 80 hours less than the total hours worked by Plaintiffs that worked eight hour and twenty-minute (8.33 hour) shifts, since twenty minutes of each shift of that duration was not compensated.

12. Plaintiffs were paid four elements of compensation that were intended to compensate Plaintiffs for working 1946.56 hours of the total hours they worked per year pursuant to their regular 4-2 or 5-2 schedule, referred to herein collectively as "ANNUAL BASE PAY," as follows:

    A. annual salary;

    B. education incentive pursuant to M.G.L. Chapter 41, §108L, referred to as "Quinn Bill" incentive, computed as a percentage of annual salary depending on the level of the degree in law enforcement, including 10% for an Associate Degree or 60 points

      earned towards a Baccalaureate Degree; 20% for a Baccalaureate Degree; and 25% for a Master's Degree or Law Degree;

C.    career incentive for Plaintiffs who did not qualify for the education incentive described in this averment at paragraph "B" above, but who were employed with the City for the requisite years, or for Plaintiffs when the career award was higher than the education incentive. The City paid the career incentive to Plaintiffs based upon their years of service in an amount ranging from 1.39% to 15% of annual salary; and,

D.    for Plaintiffs who had more than five (5) years of service, a Master Patrol Officer ("MPO") Differential, each workweek in a dollar amount equal to 3.168% of the 4th step patrol officer base weekly salary in effect that workweek.

13.   In addition to ANNUAL BASE PAY described <u>supra</u> at ¶12, the City paid Plaintiffs at least ten additional wage augments, also intended to compensate them for working 1946.56 hours of the total hours they worked per year pursuant to their regular 4-2 or 5-2 schedule, hereinafter referred to as "WAGE AUGMENTS," as follows:

(a)   <u>Night Shift Differential.</u> The City paid Plaintiffs who regularly worked the night shift a weekly stipend that was equal in dollar amount to seven percent (7%) of the 4th step patrol officer weekly salary in effect that workweek.

(b) <u>Weapons Familiarization Differential.</u>  The City paid Plaintiffs a yearly stipend in a dollar amount equal to 1.785% to 3.5% of the 4th step patrol officer base annual salary in effect from time to time for weapons familiarization.  The City paid weapons familiarization pay in two (2) equal installments on July and January of each year.

(c) <u>Hazardous Duty Pay.</u>  The City paid Plaintiffs hazardous duty pay, each month, in a dollar amount equal to 7.794% to 11.25% of the 4th step patrol officer base annual salary rate in effect in the month it was paid.

(d) <u>Attendance Incentive.</u>  For Plaintiffs that do not use a single sick day, leave of absence, or other unpaid status in any six (6) month period measured from January through June, and July through December, of each year, Plaintiffs receive compensation of $300.

(e) <u>Weekend Differential.</u>  The City paid Plaintiffs who regularly work on Saturday and/or Sunday a weekend differential, each week, in a dollar amount equal to four percent (4%) of the 4th step patrol officer base weekly salary rate in effect in that workweek.

(f) <u>Emergency Medical Technician Differential</u>.  The City paid to Plaintiffs who were certified as an emergency medical technician (EMT) an annual EMT Differential in the amount of $350. The City paid the EMT differential in a lump sum payment on the Plaintiff's first payday in June of each year.

(g) <u>Specialist Differential</u>.  The City paid the Plaintiffs who were assigned to the detail room an annual specialist differential of $5,500.

(h) <u>Monday-Friday Shift Differential.</u>  The City paid a shift differential, each week, in a dollar amount equal to 1.397% of the 4th step patrol officer base weekly salary in effect that workweek for Plaintiffs regularly scheduled on the day shift Monday through Friday, and assigned to any one of the following areas: (a) the Selective Enforcement Unit; (b) the Administrative Section, which includes the Off-Duty Employment, Academy Training, Records/Property, and Court Prosecutor; (c) the Investigation Section, which includes, Vice/Narcotics, General Assignment, Sexual Assault, and Warrant Unit; and (d) Community Relations.

(i) <u>Duty Differential.</u> The City paid to Plaintiffs regularly assigned as Booking Officer, Station Relief, Wagon Officer, or Clerk on a four (4) shift basis weekly a Duty Differential in the amount of up to $50/week.

(j) <u>Sexual Assault On-Call Differential.</u>  The City paid to Plaintiffs within the Investigations Section on a weekly rotational basis an sexual assault on-call differential to respond to incidents of sexual assault. The City paid the sexual assault on-call differential in an amount equal to $100 for each weekly on-call assignment.

14. The City also paid officers a special rate of pay referred to as a "detail rate." The "detail rate" was a non-premium, straight time rate of pay that is separate and distinct from the non-premium, straight time hourly rate paid to officers that comprises their ANNUAL BASE PAY and WAGE AUGMENTS described supra at ¶¶12–13.

15. The detail rate was paid for work that Plaintiffs performed that is categorized for purposes of this complaint as "Private Details" and "City Details" as described infra at ¶¶16-17, and is exclusive of the regular police work that Plaintiffs performed pursuant to their regular 4-2 or 5-2 schedule.

16. Private Details. The detail rate was paid for situations when a private vendor was performing work that required monitoring for public safety and/or traffic control by a police officer, such as a telephone company, electric company, gas company, or private construction company, performing work that impacted traffic on public streets. The City charges the vendors an administrative fee for such details. These details are referred to herein as "Private Details," and are subject to the following control measures implemented by the City, as follows:

    (a) The City maintains a policy governing the behavior of police officers while working Private Details, City of Cambridge Police Department Detail Policy ("Detail Policy"), which provides that "Police Officers performing paid police details for the Cambridge Police Department shall be subject to all the Rules and Regulations of the Cambridge Police

       Department and shall be answerable for the same in their entirety."

  (b)    The Detail Policy provides that the City may discipline police officer for their actions while on Private Details if they violate City policies and work rules.

  (c)    The Detail Policy also mandates what time officers must report to Private Details, as well as that they adhere to the City's uniform policy.

17.   <u>City Details.</u>  The detail rate was also paid for situations when City workers, or a vendor hired by the City, performed work that required monitoring for public security, safety and/or traffic control by police officers. The City does not charge an administrative fee for its own details. These types of details are referred to herein as "City Details," examples of which include the following:

  (a)    when employees from the City's Department of Public Works, Highway Division, Water and Sewer Division performed work on a road (e.g., repair, non-emergency snow removal that requires traffic control);

  (b)    when the School Department required a police officer for public security, safety and/or traffic control for high school sporting events such as football games, basketball games, or non-sporting school event such as graduation;

(c) P. Gioioso & Sons, Inc., Hyde Park, MA (water mains, utility construction for municipality); Newport Construction Corporation, Nashua, NH (water mains, side walks, roads); Barletta Heavy Division, Inc. and/or Barletta Engineering Corporation, Canton, MA (water mains, roads, side walks); Rapid Flow Inc., Revere, MA (sewer); JNJ Sacca, Inc., Arlington, MA (hydrants, water mains); Bartlett Tree Experts, Waltham, MA (Multiple Offices) (tree work); and Cambridge Landscape Co. Inc., Cambridge, MA (landscaping, tree work).

18. When Plaintiffs perform regular police work for which they were paid their annual base rate, and City details, they were performing work on behalf of the City. Hereinafter the expression "work(ed) on behalf of the City" includes such regular police work and City Details.

19. From May 15, 2015 through the date the complaint was filed on May 15, 2018, and thereafter, Plaintiffs worked on behalf of the City in excess of 40 weekly hours in or more workweeks.

20. Plaintiffs were paid premium compensation referred to as "overtime" when they performed *regular police work* in excess of 40 hours in a 7-day work period, excluding: (a) Private or City Details of up to eight hours in duration for which overtime was not paid; and (b) for shifts of a duration of eight hours and twenty minutes (8.33 hour), no compensation paid for up to 20 minutes of work performed beyond 8 hours of work performed. Where overtime

was paid, it was routinely paid more than seven days after the week in which it was earned.

21. The City did not count City Details as hours worked on behalf of the City, and did not pay overtime to the extent that a Plaintiff worked in excess of 40 hours in a 7-day work period as a result of working City Details of up to eight hours in duration.

22. In calculating the overtime rate paid to Plaintiffs for regular police work performed in excess of 40-hours in a 7-day work period, the City divided each Plaintiff's ANNUAL BASE PAY by 2,080 hours to find an hourly rate, and then multiplied such hourly rate by 1.5 to find each Plaintiff's overtime rate.

23. By dividing the ANNUAL BASE PAY by a denominator of 2080 hours rather than 1946.56 hours, the City divided the ANNUAL BASE PAY by a denominator that was higher than the actual number of hours per year that the ANNUAL BASE PAY was intended to compensate; this resulted in the City paying an overtime rate that was lower than if the ANNUAL BASE PAY was divided by the true number of hours that the ANNUAL BASE PAY was intended to compensate of 1946.56 hours per year.

24. In computing the overtime rate, the City only accounted for the ANNUAL BASE PAY, but excluded all other forms of regular, non-premium, straight time compensation such as WAGE AUGMENTS described <u>supra</u> at ¶13, and the detail rate paid when Plaintiffs worked City Details described <u>supra</u> at ¶17.

25. The City pays Plaintiffs Private Details and City Details five weeks after the week in which such compensation was earned.

### COUNT I (FLSA)

26. With respect to the first count, Plaintiffs incorporate by reference and re-allege each of the foregoing paragraphs 1-25 as if fully set forth here.

27. The FLSA requires the City to pay Plaintiffs for all work performed in excess of 40-hours in a 7-day work period "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a) (emphasis added).

28. In computing the FLSA "regular rate" and corresponding overtime rate, the City unlawfully excluded regular compensation that is paid for the WAGE AUGMENTS described supra at ¶13 and City Details described supra at ¶17.

29. In computing the regular rate from the ANNUAL BASE PAY as described supra at ¶12, the City artificially lowered the FLSA "regular rate" by unlawfully dividing the ANNUAL BASE PAY by a denominator that is higher than the ANNUAL BASE PAY is intended to compensate—specifically by dividing the ANNUAL BASE PAY by the inaccurate figure of 2080 hours per year rather than the true figure of 1946.56 hours per year that the ANNUAL BASE PAY was intended to compensate.

30. Even though City Details are time worked on behalf of the City and therefore should be counted as hours worked for the City, the City failed to account for hours worked by Plaintiffs on City Details in computing total hours

worked and overtime owing to Plaintiffs in the 7-day work period, and paid for Private Details and City details five weeks after the workweek in which it was earned.

31. Even though Plaintiffs that worked regularly scheduled shifts of a duration of eight hours and twenty minutes (8.33 hour) were entitled to have all time worked on such shift counted toward the total hours worked in the week, and entitled to be compensated for such time, the City paid Plaintiffs for only eight hours of such shifts and excluded up to twenty minutes of such shift from the City's computation of total time worked in a workweek and compensation paid.

32. By the foregoing overtime computation and payment practices, the City violated the FLSA by willfully and intentionally failing and refusing to pay Plaintiffs all overtime required by the FLSA from May 15, 2015 through the date the complaint was filed on May 15, 2018 and thereafter.

## COUNT II (WAGE ACT)

33. With respect to the second count, Plaintiffs incorporate by reference and re-allege each of the foregoing paragraphs 1-32 as if fully set forth here.

34. Because Plaintiffs were entitled to overtime pay for any weekly hours worked on behalf of the City in excess of 40 hours pursuant to the FLSA, and because Plaintiffs completed labor in excess of 40 hours in a 7-day work period during one or more weeks from May 15, 2015 through the date the

complaint was filed on May 15, 2018 and thereafter, the Plaintiff's "earned" those overtime wages under the FLSA.

35. Because the City failed to pay these "earned" overtime wages as required by the FLSA within seven days of the termination of the relevant pay periods, the City violated G. L. c. 149, §§ 148, 150.

## COUNT III (WAGE ACT)

36. With respect to the third count, Plaintiffs incorporate by reference and re-allege each of the foregoing paragraphs 1-35 as if fully set forth here.

37. The City routinely paid the following forms of compensation more than six days after the end of the pay period: (a) City Details and Private Details, five weeks after the workweek in which it was earned; and (b) with respect to the "overtime" that the City did pay on an ongoing basis (albeit at a rate that was less than required by the FLSA), the City paid such "overtime" at least two or more weeks after the workweek in which it was earned.

38. Because the Plaintiffs were entitled to receive their wages within six days of the end of the pay period pursuant to G. L. c. 149, §§ 148, 150, and because the City failed to do so, the City violated the timely payment of wages requirements of G. L. c. 149, §§ 148, 150.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A. Order the Defendant, under supervision of Plaintiffs' counsel or their designated agents or representatives, to make a complete and accurate accounting of unpaid overtime compensation owing to each Plaintiff under the

FLSA starting three years prior to the date that the instant complaint was filed in Federal District Court to the date of judgment.

  B. Enter a judgment under FLSA Section 216 against Defendant for payment of back wages for unpaid overtime compensation—plus an equal amount in liquidated damages—owing to each Plaintiff for the three years prior to the date that the instant complaint was filed in Federal District Court to the date of judgment,[1] plus all reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting this FLSA complaint.

  C. Order the Defendant, under supervision of Plaintiffs' counsel or their designated agents or representatives, to make a complete and accurate accounting of unpaid overtime compensation owing to each Plaintiff under G. L. c. 149, §§ 148, 150 starting three years prior to the date that the instant complaint was filed in Federal District Court to the date of judgment.

  D. Enter a judgment under G. L. c. 149, §§ 148, 150 against Defendant for payment of unpaid, earned compensation—plus an equal amount in treble damages—owing to each Plaintiff for the three years prior to the date that the complaint was filed in Federal District Court to the date of judgment, plus all reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting the Massachusetts Wage Act claim.

---

[1] Assuming arguendo that no liquidated damages are held owing for any portion of the backpay liability—and Plaintiffs in no way concede that point—Plaintiffs then respectfully request that the Court enter a judgment against Defendant for prejudgment statutory interest on all such amounts.

18

E.  Enter a judgment under G. L. c. 149, §§ 148, 150 against Defendant for 12% statutory interest, per G.L. c. 231, § 6C, for earned compensation that was (i) earned during the three years prior to the date that the instant complaint was filed in Federal District court, (ii) paid more than 6 days following the end of the workweek in which it was earned, and (iii) paid <u>prior</u> to the date that the complaint in this matter was filed.  Interest shall be computed at 12% from the date that compensation should have been paid, to the date it was eventually paid, plus two times the 12% interest owing pursuant to the treble damages provisions of the Massachusetts Wage Act, plus all reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting the Massachusetts Wage Act claim.

F.  Enter orders and judgments as may otherwise be a just and proper to remedy the Defendant's unlawful violations of the statutes relayed above.

    Respectfully submitted,

    On behalf of the Plaintiffs,

    By Plaintiffs' Counsel:

    */s/ Jack J. Canzoneri*
    Jack J. Canzoneri, BBO #564126
    jcanzoneri@masslaborlawyers.com
    Olinda R. Marshall BBO # 659098
    omarshall@masslaborlawyers.com
    McDonald Lamond Canzoneri
    352 Turnpike Road, Suite 210
    Southborough, MA  01772-1756
    (508) 485-6600

Dated:  June 12, 2018

**CERTIFICATE OF SERVICE**

      I hereby certify that this document entitled First Amended Complaint was filed through the CM/ECF system this date; that counsel for the Defendant City of Cambridge, Nancy Glowa, 795 Massachusetts Avenue, 3rd Floor, Cambridge, MA 02139, accepted service of the original Complaint (Doc #1) by execution of a "Waiver of the Service of Summons" filed by undersigned counsel for Plaintiffs this day with the Court via the CM/ECF system; that counsel Nancy Glowa however has not filed an appearance in this matter and therefore would not receive this First Amended Complaint in the normal course through the CM/ECF system; therefore, the foregoing First Amended Complaint was served upon counsel for Defendant City of Cambridge, Nancy Glowa, 795 Massachusetts Avenue, 3rd Floor, Cambridge, MA 02139, by the undersigned by first class mail, postage pre-paid this day.

                                            *s/Jack J. Canzoneri*
                                            Jack J. Canzoneri
                                            June 12, 2018